UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN L. CLINE and ELIZABETH A. CLINE, <br><br> Plaintiffs, <br><br> v. <br><br> REAL TIME RESOLUTIONS, INC. et al., <br><br> Defendants. | No. 2:25-cv-02001-TLN-AC <br><br><br> **ORDER** |

      This matter is before the Court on Plaintiffs Jonathan L. Cline and Elizabeth A. Cline's ("Plaintiffs") Motion for a Preliminary Injunction. (ECF No. 6.) Defendant Real Time Resolutions, Inc. ("Defendant") filed an opposition. (ECF No. 7.) Plaintiffs filed a reply. (ECF No. 10.) For the reasons set forth below, the Court DENIES Plaintiffs' Motion.

///

///

///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises out of a dispute related to a loan transaction and an upcoming foreclosure sale. In June 2004, Plaintiffs obtained title to a piece of property located at 1716 Gateforth Drive, Roseville, CA 95747 ("Property"). (ECF No. 1 ¶ 22.) In 2006, Plaintiffs obtained a $48,671.00 line of credit from American General Financial Services. (*Id.* ¶ 25.) The loan was a junior loan, secured by the Property via a Deed of Trust. (*Id.*) The Deed of Trust was recorded on September 13, 2006, in the Office of the Recorder, Placer County, California as document number 2006-0098098. (*Id.*)

In November 2011, Plaintiff Elizabeth Cline ("Ms. Cline") was communicating with American General Financial Services about modifying their line of credit. (*Id.* ¶ 27.) Around this time, an American General Financial Services manager in the Folsom, California office told Ms. Cline the mortgage could be modified, and she would provide paperwork for Ms. Cline to sign after the holidays. (*Id.* ¶ 28.)

In January 2012, Ms. Cline contacted the Folsom office after not hearing back from the American General Financial Services manager. (*Id.* ¶ 29.) Ms. Cline was informed the modification was still "going through" and would be ready within a few weeks. (*Id.*) On February 22, 2012, Ms. Cline stopped by the Folsom office and was told the modification had not yet been approved. (*Id.* ¶ 31.) Ms. Cline continued to follow up and each time was told the modification was still pending. (*Id.* ¶ 32.) In 2012, Plaintiffs stopped receiving mortgage statements and correspondence and were never contacted again about the modification. (*Id.* ¶¶ 32–33.)

In March 2013, Ms. Cline attempted to follow up with the Folsom office. (*Id.* ¶ 35.) She was told the "loan had been closed and charged off" and Plaintiffs did not need to do anything further. (*Id.*) In July 2016, Plaintiffs pulled a title report and realized the Deed of Trust still showed up and American General Financial Services had changed its name to Springfield Financial Services. (*Id.* ¶ 36.) Plaintiffs attempted to get information from Springfield Financial Services but received no response. (*Id.* ¶ 37.)

///

1     Plaintiffs received no further communication about the loan until March 13, 2024, when
2  Defendant wrote to Plaintiffs regarding a delinquent mortgage. (*Id.* ¶¶ 38–39.) On April 13,
3  2024, Ms. Cline wrote to Defendant stating she was unaware of the debt and noted that Plaintiffs'
4  mortgage with Rushmore Loan Servicing was in good standing. (*Id.* ¶ 40.) Plaintiffs received no
5  response. (*Id.* ¶ 41.)

6     In February 2025, Defendant notified Plaintiffs there was a Notice of Default for their
7  Property. (*Id.* ¶ 42.) Plaintiffs responded asking Defendant to validate the debt and provide
8  specific information and documentation. (*Id.* ¶ 43.) On May 12, 2025, Real Time responded to
9  Plaintiffs, providing: a copy of the Lost Note Affidavit, reflecting the original loan amount of
10 $48,671.00; a copy of the signed Open-End Deed of Trust, the instrument that secures the loan to
11 the associated property; a copy of the Assignment of Deed of Trust dated February 26, 2025;
12 copies of all available Notice of Servicing Transfer letters; a copy of the Notice of Assignment,
13 Sale or Transfer of Your Mortgage Loan letter dated May 7, 2020; and a loan history summary.
14 (*Id.* ¶ 45.)

15     Plaintiffs allege they never received any of the documents Defendant provided and never
16 changed their mailing address for the loan. (*Id.* ¶ 46.) Further, Plaintiffs allege they were never
17 advised the loan was accruing interest while no collection efforts were made on the loan,
18 particularly when they were told the loan was closed and charged off. (*Id.* ¶ 47.)

19     On March 17, 2025, Defendant recorded a Notice of Default on the Property and Election
20 to Sell under Deed of Trust.[1] (*Id.* ¶ 48; ECF No. 7 at 7.) The trustee's sale was originally
21 scheduled for July 12, 2025, but was rescheduled to September 17, 2025. (ECF No. 7 at 7.)

22     On July 17, Plaintiffs filed a Complaint alleging several claims including: breach of the

---

[1] Plaintiffs request the Court take judicial notice of both the Assignment of Deed of Trust and the Notice of Default and Election to Sell under the Deed of Trust. (ECF No. 6-3 at 2.) The Court finds these documents not subject to reasonable dispute and GRANTS Plaintiffs' request for judicial notice. *See* Fed. R. Evid. 201(b); *Wilkinson v. PHH Mortg. Corp.*, No. 2:24-CV-1416 TLN AC PS, 2025 WL 565971, at *2 (E.D. Cal. Feb. 20, 2025), *report and recommendation adopted*, No. 2:24-CV-01416-TLN-AC, 2025 WL 1262873 (E.D. Cal. May 1, 2025) (taking judicial notice of Deed of Trusts). All other requests for judicial notice of documents upon which this Court does not rely are DENIED as moot.

implied covenant (claim Two); violation of the Federal Truth in Lending Act (Claim Three); violation of California Civil Code § 2924.17 (Claim Four); Promissory Estoppel (Claim Five); violation of California Civil Code § 2924.13 (Claim Six); Violation of Business and Professions Code § 17200 (Claim Seven).[2]  (*See generally* ECF No. 1.)  On July 22, 2025, Plaintiff filed the instant motion for a preliminary injunction seeking to enjoin the foreclosure sale of their home on September 17, 2025.  (ECF No. 6.)

## II.   STANDARD OF LAW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction.  *Id.* at 1134–35 (emphasis added).

## III.   ANALYSIS

Plaintiffs argue they are likely to prevail on the merits or at least raise serious questions going to the merits of each of the causes of action — (1) California Civil Code § 2924.13; (2)

---

[2]  Plaintiff's Complaint lists the first cause of action for "Breach of Contract — Third Party Beneficiary" in the Complaint's caption, but the pleading does not contain any allegations of the claim.  (*See generally* ECF No. 1.)

4

1  California Civil Code § 2924.17; (3) Breach of Implied Covenant of Good Faith and Fair
2  Dealing; (4) Truth in Lending Act; (5) Promissory Estoppel; and (6) Unfair Competition Law.
3  (ECF No. 6-1.) Defendant disagrees. (ECF No. 7.) The Court begins by examining the merits of
4  each claim in turn.

A.   Violation of Cal. Civ. Code § 2924.13

Cal. Civ. Code § 2924.13 ("§ 2924.13") outlines different conduct which constitutes unlawful practice in connection with a subordinate mortgage. This conduct includes, but is not limited to, when a mortgage servicer fails to "provide the borrower with any written communication regarding the loan secured by the mortgage for at least three years" or fails to "provide a transfer of loan servicing notice to the borrower[.]" Cal. Civ. Code § 2924.13(b)(1)-(2). Additionally, under § 2924.13(c), a mortgage servicer shall not conduct a nonjudicial foreclosure until two requirements are met. First, the mortgage servicer must record, with the notice of default, a certification under penalty of perjury that either the mortgage servicer did not engage in an unlawful practice or lists the unlawful practices committed. *Id.* § 2924.13(c)(1)-(2). Second, the mortgage servicer must send both the recorded notice of default and requisite certification to the borrower's last known mailing address along with a notice that if the borrower believes the mortgage servicer engaged in an unlawful practice or misrepresented its compliance history, the borrow can petition the court for relief prior to the foreclosure sale. *Id.*

Plaintiffs argue Defendant violated § 2924.13 by failing to record or send the requisite certification and failing to mail the requisite notices. (ECF No. 6-1 at 14.) In opposition, Defendant argues § 2924.13 only came into effect on June 30, 2025, after the Notice of Default was recorded in March 2025 and cannot be applied retroactively. (ECF No. 7 at 8–9.) Further, Defendant contends that a civil statute which creates civil liability that did not exist when Defendant did the relevant action violates due process.[3] (*Id.* at 9.)

---

[3] Defendant also argues that regardless, Plaintiffs are unlikely to succeed on this claim, because Defendant sent Plaintiff "numerous correspondence" regarding the relevant loan. (ECF No. 7 at 10.) Because the Court finds Plaintiffs have not shown serious questions going to the merits of whether § 2924.13 in fact applies retroactively, the Court does not address this argument nor Plaintiffs' response to it. (*See* ECF No. 10 at 10–11.)

5

1    In reply, Plaintiffs seem to argue that retroactivity is not an issue because the Court can
2 provide different equitable remedies under § 2924.13(f). (ECF No. 10 at 11.) Further, without
3 any citation to authority, Plaintiffs contend if the statute was not retroactive, § 2924.13(b) would
4 not be actionable for at least three more years, which according to Plaintiffs, could not have been
5 what the Legislature intended. (*Id.*)
6    Under California law, "unless there is an 'express retroactivity provision, a statute will *not*
7 be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must
8 have intended a retroactive application." *Myers v. Philip Morris Companies, Inc.*, 28 Cal. 4th
9 828, 841, 50 P.3d 751 (2002) (quoting *Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1209
10 (1988)). Here, Plaintiffs do not cite to an express retroactivity provision nor provide any extrinsic
11 sources demonstrating the California Legislature intended § 2924.13 to apply retroactively.
12 Without more, the Court finds Plaintiffs have not met their burden to establish serious questions
13 going to the merits, let alone likelihood of success on the merits.

14    B.    Violation of Cal. Civ. Code § 2924.17

15    Prior to recording or filing a notice of default or a notice of sale, "a mortgage servicer
16 shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's
17 default and the right to foreclose, including the borrower's loan status and loan information."
18 Cal. Civ. Code § 2924.17(b). "If a trustee's deed upon sale has not been recorded, a borrower
19 may bring an action for injunctive relief to enjoin a material violation of [§] . . . 2924.17." Cal.
20 Civ. Code § 2924.12(a).
21    Here, Plaintiffs argue Defendant violated § 2924.17 by failing to evaluate competent and
22 reliable evidence related to the loan before recording the Notice of Default and Notice of
23 Trustee's Sale. (ECF No. 6-1 at 15.) According to Plaintiffs, this failure is apparent because
24 there is no original promissory note for the loan, the file would have noted the "charge off and
25 simultaneously improper accrued interest" and the loan file would have noted the lack of contact
26 and correspondence to Plaintiffs about the loan. (*Id.*)
27    In opposition, Defendant argues a cause of action under § 2924.17 does not arise until
28 after the foreclosure sale is completed. (ECF No. 7 at 10 (citing *Lucioni v. Bank of Am., N.A.*, 3

1   Cal. App. 5th 150, 163 (2016).)  Additionally, Defendant contends the fact that the original

2   promissory note was lost does not establish Defendant did not review competent evidence.  (*Id.* at

3   11.)  According to Defendant, it has sufficiently presented evidence that it reviewed the file, the

4   loan was not charged off, and it sent numerous letters to Plaintiffs regarding the outstanding

5   balance.  (*Id.* (citing ECF No. 7-1 at 15–438).)

6         In reply, Plaintiffs contend a cause of action under § 2924.17 can arise pre-foreclosure,

7   which is evidenced by the fact that § 2924.12(a) specifically provides for injunctive relief for

8   such violations.  (ECF No. 10 at 12.)  Further, Plaintiffs argue there are serious questions going to

9   whether Defendant reviewed the file, because they present: (1) a Lost Note Affidavit which

10  demonstrates the mortgage was in fact "charged off" despite Defendant's argument to the

11  contrary; (2) an incomplete servicing transfer history; and (3) testimony regarding the complete

12  lack of communication and collection efforts on the loan.  (*Id.* at 12.)

13        The Court first addresses whether Plaintiffs can assert a cause of action § 2924.17 pre-

14  foreclosure.  First, while Plaintiff is correct that § 2924.12 allows borrowers to bring an action for

15  injunctive relief for violations of § 2924.17, such relief is only allowed if the violations are

16  "material."  Cal. Civ. Code § 2924.12(a); *see also Cardenas v. Caliber Home Loans, Inc.*, 281 F.

17  Supp. 3d 862, 869 (N.D. Cal. 2017) (finding the same); *Rahbarian v. JP Morgan Chase*, No.

18  2:14-CV-01488-JAM, 2015 WL 2345395, at *3 (E.D. Cal. May 14, 2015) (noting courts in the

19  Ninth Circuit that have addressed the issue have "take[n] divergent approaches" to defining

20  "material" under § 2924.12).  Plaintiffs do not provide any authority defining a "material"

21  violation as used in § 2924.12.  Without more, the Court cannot determine whether the alleged

22  violations are material, thereby making injunctive relief appropriate.

23        Moreover, Plaintiffs make no attempt to distinguish the instant action from the California

24  Court of Appeal's decision in *Lucioni*, which Defendant cites in opposition.  In *Lucioni*, the court

25  held "[§] 2924.17 . . . do[es] not create a right to litigate, pre-foreclosure, whether the foreclosing

26  party's conclusion that it had the right to foreclose was *correct*."  3 Cal. App. 5th at 163.  By

27  seeking to enjoin the foreclosure sale based on Defendant's "failure to review reliable evidence

28  regarding the loan" it appears Plaintiffs seek to do exactly that — litigate Defendant's right to

1   foreclose. According to *Lucioni*, such an action is not authorized under § 2924.17.

2   Without more, the Court finds Plaintiffs have failed to meet their burden of raising serious
3   questions going to the merits of this claim.

                                               C.        <u>Claim Three: Breach of Implied Covenant</u>

5   "A claim for breach of the implied covenant of good faith and fair dealing requires the
6   same elements [as a claim for breach of contract], except that instead of showing that defendant
7   breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the
8   plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time
9   of contracting." *Alphonso v. Real Time Resols., Inc.*, No. 23-CV-01488-JSC, 2023 WL 3794502,
10  at *4 (N.D. Cal. June 2, 2023) (internal citation omitted).

11  Plaintiffs contend they were in a contractional relationship with Defendant pursuant to the
12  Promissory Note and Deed of Trust at issue. (ECF No. 6-1 at 16.) According to Plaintiffs,
13  Defendant interfered with Plaintiffs' ability to perform on the contract by failing to transmit
14  monthly statements for thirteen years and ceasing collection efforts. (*Id.* at 16–17.) Plaintiffs
15  argue these actions led them to believe the loan was closed and charged off and they no longer
16  owed any debt. (*Id.*)

17  In opposition, Defendant argues Plaintiffs cannot succeed on their claim because the
18  "implied covenant of good faith and fair dealing is limited to assuring compliance with the
19  express terms of the contract." (ECF No. 7 at 11 (quoting *Pasadena Live, LLC v. City of*
20  *Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004).) According to Defendant, Plaintiffs have not
21  procured the Promissory Note, and the Deed of Trust imposes no obligation to transmit monthly
22  statements. (*Id.*) Moreover, Defendant argues it already fulfilled its obligation when it disbursed
23  the loan to Plaintiffs. (*Id.*) Relying on *Alphonso*, Defendant argues any alleged failure to deliver
24  monthly statements did not interfere with the benefit because Plaintiffs received the full benefit of
25  the contract. (*Id.* at 12.) Finally, Defendant contends that just because Plaintiffs claim they did
26  not receive the letters from Defendant regarding the outstanding balance on their loan does not
27  mean they did not receive them. (*Id.*)

28  ///

In reply, Plaintiffs maintain their position that Defendant's inaction interfered with Plaintiffs' ability to perform on the contract thereby inducing Plaintiffs' breach. (ECF No. 10 at 13.) According to Plaintiffs, this argument is reinforced under various California laws. (*Id.* at 13–15.) However, Plaintiffs do not articulate how these laws provide "a benefit conferred by the contract" of which Defendant deprived Plaintiffs. *See Alphonso*, 2023 WL 3794502, at *4. Nor do Plaintiffs cite to a portion of the Deed of Trust that required monthly statements to be sent such that Defendants' alleged failure to do so constitutes a breach. Moreover, Plaintiffs only provide conclusory statements in Ms. Cline's declaration that after 2016, Plaintiffs "received no communication on the loan . . . no collection contacts, no statements, and no billing attempts." (ECF No. 6-2 ¶ 13.) Meanwhile, Defendant's counsel attests that "at no point was there a period of more than three years where [Defendant] did not send correspondence to Plaintiffs." (ECF No. 7-1 ¶ 8.) Additionally, Defendant attached to the declaration a selection of letters sent to Plaintiffs between 2015 to the present. (*Id.*; ECF No. 7-1 at 15–438.) The statements are addressed to Ms. Cline and have the Property address listed. (ECF No. 7-1 at 15–438.) The address also matches the response Plaintiffs contend they received from Defendant. (*See* ECF No. 6-2 at 11.) This evidence appears to directly contradict Plaintiffs' statement that they never received statements during the relevant period.

Without more, the Court finds Plaintiffs have failed to meet their burden by raising serious questions going to the merits of this claim.

### D. Claim Four: Violation of the Truth in Lending Act

Under the Truth in Lending Act ("TILA"), "a plaintiff must allege specific facts showing that either: (1) the plaintiff did not receive a required disclosure; or (2) the plaintiff received disclosures that were not clear and conspicuous." *Ramos v. Funding Rush, Inc.*, No. 123CV01016ADAHBK, 2023 WL 5241914, at *3 (E.D. Cal. Aug. 15, 2023). Any TILA claim "may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation[.]" 15 U.S.C. § 1640(e).

///

1    Plaintiffs argue Defendant violated the TILA by failing to communicate with Plaintiffs
2    about their loan in violation of 15 U.S.C. § 1638(f) and charging interest on their charged off loan
3    while making no collection efforts in violation of 12 CFR 1026.41(e)(6)(ii).  (ECF No. 6-1 at 17.)
4    In opposition, Defendant argues Plaintiffs have not established 12 U.S.C. § 1026.41 applies to an
5    open-end credit line like the home equity line of credit at issue.  (ECF No. 7 at 13.)  Additionally,
6    Defendant contends Plaintiffs' claims are time-barred, because TILA violations have a one-year
7    statute of limitations.  (*Id.*)  Finally, Defendant argues Plaintiffs have not established what actual
8    damages they have suffered due to Defendant's alleged failure to provide periodic statements.
9    (*Id.*)

10   In reply, Plaintiffs argue Defendant does not address Plaintiffs' claim under 15 U.S.C. §
11   1638(f).  (ECF No. 10 at 15.)  Further, in response to Defendant's argument about the claim being
12   time barred, Plaintiffs argue Defendant "fails to consider Plaintiffs' tolling allegations which toll
13   their discovery of the facts at hand until within the statute of limitations."

14   The Court finds Plaintiffs have failed to establish serious questions going to the merits of
15   their TILA claim.  First, even if Plaintiffs were to prevail on this claim, Plaintiffs provide no
16   authority indicating Defendant's purported failure to provide periodic statements entitle Plaintiffs
17   to injunctive relief.  *See Rodriguez v. Real Time Resols., Inc.*, No. 5:22-CV-00453-JLS-SP, 2022
18   WL 1844114, at *3 (C.D. Cal. Apr. 28, 2022) (finding the same).  Second, while Plaintiffs argue
19   their allegations toll the statute of limitations, Plaintiffs do not specify how or provide any
20   authority to support their position.  (*See* ECF No. 10 at 15–16.)

21   Again, without more, Plaintiffs have failed to carry their burden by raising serious
22   questions going to the merits of their claim.

23           E.       Claim Five: Promissory Estoppel

24   "Under California law, the elements of promissory estoppel are[:] (1) a promise clear and
25   unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance
26   must be both reasonable and foreseeable; (4) and the party asserting the estoppel must be injured
27   by his reliance."  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012)
28   (citing *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887 (2005)).  However, "[a] mortgage or

10

1   deed of trust also comes within the statute of frauds." *Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-*
2   *2*, 167 Cal. App. 4th 544, 552 (2008). Under the statute of frauds, oral modification to a
3   mortgage is invalid. *Id.*; *see also* Cal. Civ. Code § 1624.
4      Here, Plaintiffs argue that Defendant's successor-in-interest clearly and unambiguously
5   represented to Plaintiffs that the loan was closed and charged off. (ECF No. 6-1 at 18.)
6   According to Plaintiffs, they relied on this representation by not making payments, and the
7   reliance was reasonable given the representation came from the servicer of their mortgage
8   account. (*Id.*) Finally, Plaintiffs contend they were injured because their property is endangered
9   and set for auction. (*Id.*)
10      In opposition, Defendant argues the purported modification to Plaintiffs deed of trust is
11  invalid because Plaintiffs provide no documentation demonstrating the promissory note was
12  cancelled or the Deed of Trust was otherwise modified. (ECF No. 7 at 14.) Moreover, Defendant
13  argues any claim for promissory estoppel based on an oral promise has a two-year statute of
14  limitations. (*Id.*)
15      In reply, Plaintiffs do not respond to Defendant's argument that this claim is time barred
16  nor that such a modification was required to be in writing in order to be effective. (ECF No. 10 at
17  16.) Instead, Plaintiffs argue, without any citation to authority, that Defendant is a successor-in-
18  interest and therefore liable for representations and promises made about the loan's status. (*Id.*)
19      The Court agrees with Defendant. First and foremost, under California law, there is a
20  two-year statute of limitations period for a claim brought pursuant to an oral promise. Cal. Civ.
21  Proc. Code § 339. Here, Plaintiffs contend they were told in March 2013 that their "loan had
22  been closed and charged off." (ECF No. 1 ¶ 35.) In 2016, they were alerted to the fact that the
23  Deed of Trust still showed up on their title report. (*Id.* ¶ 36.) However, they waited to file this
24  action until 2025, making this claim time-barred.
25      Based on the foregoing, the Court finds Plaintiffs have not carried their burden by raising
26  serious questions going to the merits of this claim.
27      F.   Claim Six: Unfair Competition Law ("UCL")
28      California law prohibits "any unlawful, unfair, or fraudulent business act or practice."

11

Cal. Bus. & Prof. Code § 17200.  "Section 17200 incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law."  Causey v. Portfolio Acquisitions, LLC, No. 2:10-cv-2781-KJM-EFB PS, 2013 WL 246916, at *3 (E.D. Cal. Jan. 22, 2013).  A § 17200 claim can be based on a violation of almost any federal, state, or local law.  *Id.* (citing Saunders v. Super. Ct., 27 Cal. App. 4th 832, 838–39 (1994))

Plaintiffs argue Defendant's various legal violations constitute violations of § 17200.  (ECF No. 6-1 at 19.)  Further, Plaintiffs contend Defendant is "taking advantage of the years Plaintiff[s] expended building equity in [their] home, for their own financial gain."  (*Id.* at 20.)  According to Plaintiffs, these allegations are sufficient to establish a claim under the UCL unfair prong.  (*Id.*)

In opposition, Defendant argues that because Plaintiffs cannot establish a predicate claim, Plaintiffs are unlikely to establish a UCL claim.  (ECF No. 7 at 15.)  In reply, Plaintiffs argue there are serious questions regarding Plaintiffs' underlying claims and further there is an independent claim for unfair business practices under the unfair prong.  (ECF No. 10 at 16.)

Here, the Court finds Plaintiffs do not raise serious questions as to the merits of this claim.  First, as discussed above, the Court finds Plaintiffs do not raise serious questions regarding the underlying claims.  Second, while the Court is sympathetic to Plaintiffs' argument about building equity in their home, in light of the evidence Defendant presents regarding the letters that were sent directly to Plaintiffs' property between 2015 to the present, the Court finds Plaintiffs argument about unfairness unavailing. (*See* ECF No. 7-1 at 15–438.)

In sum, the Court finds Plaintiffs have not raised serious questions going to the merits of any of their claims.  Having concluded that Plaintiffs have failed to establish a likelihood of success, the Court need not reach the remainder of the *Winter* factors.  *Pok v. ZBS L., LLP*, No. 2:25-CV-01084-DJC-CSK, 2025 WL 2021076, at *5 (E.D. Cal. July 18, 2025).  Plaintiffs' Motion for a Preliminary Injunction is DENIED.

//
//
//

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for a Preliminary Injunction (ECF No. 6).

IT IS SO ORDERED.

Date: September 12, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE